NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4599-12T1

LEONARDO ARIAS and
RUTH M. PADILLA,

     Plaintiffs-Appellants,

v.

ELITE MORTGAGE GROUP, INC.,
RAY SALAZAR, W.M.C. MORTGAGE,
CORPORATION, GE MONEY, GE
CAPITAL, and DEUTSCHE BANK,

     Defendants,

and

BANK OF AMERICA, N.A., s/h/a
BANK OF AMERICA HOME LOANS,

     Defendant-Respondent.

 

| APPROVED FOR PUBLICATION |
| :---: |
| January 23, 2015 |
| APPELLATE DIVISION |

Submitted December 9, 2014 — Decided January 23, 2015

Before Judges Reisner, Koblitz and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1316-12

Joseph A. Chang, attorney for appellants (Mr. Chang, of counsel and on the brief; Jeffrey Zajac, on the brief).

Reed Smith LLP, attorneys for respondent (Aaron M. Bender, of counsel and on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Plaintiffs Leonardo Arias and Ruth M. Padilla[1] appeal from an April 19, 2013 order granting summary judgment in favor of defendant Bank of America, N.A. (the bank).

To summarize, this case involves a dispute over a mortgage securing a loan plaintiffs obtained to purchase a two-family house.[2] Plaintiffs claim that they had a contractual right to a loan modification under the terms of the Trial Period Plan (TPP) Agreement they signed pursuant to the federal Home Affordable Mortgage Program (HAMP), and they assert that defendant breached the contract. In the alternative, they contend that the bank violated the covenant of good faith and fair dealing in denying them the loan modification.

---

[1] Plaintiffs, husband and wife, both signed the mortgage, but only Arias signed the note. We refer to Arias separately when discussing documents addressed only to him.

[2] There is no dispute that plaintiffs live in one unit and rent out the other unit. At his deposition, Arias admitted that, even after plaintiffs entirely ceased paying the mortgage, they continued collecting between $1200 and $1800 per month from tenants. There is also no dispute that at some point plaintiffs stopped paying the taxes on the property, contrary to their obligation under the mortgage.

The motion judge concluded that the TPP Agreement was not a binding contract to modify the loan. The judge found that plaintiffs, who are licensed real estate agents, understood that the Agreement did not give them any such contractual right. The judge reasoned that the bank was not required to provide plaintiffs with a loan modification, based on its determination that they did not qualify for one. The judge also concluded that plaintiffs had "no viable cause of action" under the federal HAMP guidelines, or based on the covenant of good faith and fair dealing.

Our review of a summary judgment order is de novo, using the same standard employed by the trial court. Gray v. Caldwell Wood Prods., Inc., 425 N.J. Super. 496, 499-500 (App. Div. 2012). Having reviewed the record, we find there were no material facts in dispute, and we agree with the trial judge that defendant was entitled to judgment as a matter of law. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). However, we arrive at that conclusion by a slightly different route than the trial court.

I

Before reviewing the record and setting forth our own legal analysis, we briefly discuss the most pertinent case law on which the parties rely. In Wigod v. Wells Fargo Bank, N.A., 673

F.3d 547 (7th Cir. 2012), the court cogently explained the federal HAMP program, which was designed to address the residential mortgage foreclosure crisis by encouraging lenders to extend loan modifications to qualified mortgagors. Id. at 556-57; see Emergency Economic Stabilization Act of 2008, 12 U.S.C.A. § 5219(a)(1). The court concluded that, even though there is no private cause of action under HAMP, a mortgagor may nonetheless assert a common-law contract claim based on a bank's failure to honor promises made in a HAMP Trial Period Plan Agreement.[3] The court reasoned that the terms of the TPP Agreement must be construed as a promise by the bank that if the debtor complies with its terms, she will be offered a loan modification. The court thus described the TPP Agreement as including "a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain." Wigod, supra, 673 F.3d at 562. The court reasoned that "a reasonable person in Wigod's position would read the TPP as a definite offer to provide a permanent modification that she could accept so long as she satisfied the conditions." Ibid.; see also

---

[3] HAMP provides financial incentives for mortgage servicers to assist debtors to obtain loan modifications. Wigod, supra, 673 F.3d at 556; see also Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228-29 (1st Cir. 2013). We note that defendant in the case before us acted as a loan servicer, but for simplicity, we refer to defendant as the "bank."

Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878, 883-85 (9th Cir. 2013); Young, supra, 717 F.3d at 234; Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342 (D. Mass. 2011); West v. JPMorgan Chase Bank, N.A., 154 Cal. Rptr. 3d 285 (Ct. App.), rev. denied, 2013 Cal. LEXIS 5801 (July 10, 2013).

The court rejected the bank's argument that there was no consideration for a promise to grant a loan modification because the debtor was merely making a partial payment of a debt she already owed. Wigod, supra, 673 F.2d at 564. The court pointed out that in entering into the TPP Agreement, the debtor agreed to provide additional financial information and agreed to attend debt counseling if asked to do so. Ibid.[4]; see Seaview Orthopaedics v. Nat'l Healthcare Res., Inc., 366 N.J. Super. 501, 508-09 (App. Div. 2004) (discussing adequacy of consideration). The court also rejected the bank's argument that the TPP Agreement left to the bank's sole and unbridled discretion whether to actually send the debtor a loan modification agreement once she complied with her obligations under the TPP Agreement. The court found that such an

---

[4] In a related point concerning plaintiff's promissory estoppel claim, the court noted she had refrained from other legal options she might have pursued, including filing for bankruptcy or selling her home. Id. at 566.

interpretation would render the TPP Agreement illusory. Wigod, supra, 673 F.3d at 563.

While there are no reported New Jersey cases addressing the contractual status of a TPP Agreement, case law suggests that an agreement that purports to bind a debtor to make payments while leaving the mortgage company free to give her nothing in return might violate the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195. See Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576-78 (2011). Gonzalez involved a different factual scenario from the one in this case. However, in Gonzalez the Court strongly signaled its disapproval of post-foreclosure financing deals that essentially turned debtors into "cash cows" without ever restoring their mortgages to current status. Id. at 570, 582-83.

Wigod and Gonzalez were decided in different procedural postures than the case before us. Wigod involved a motion to dismiss on the pleadings. Gonzalez involved summary judgment granted due to a mistaken interpretation of the CFA. In remanding for trial, the Court noted that there were material factual issues and plaintiff's factual claims "still must survive the crucible of a trial." Gonzalez, supra, 207 N.J. at 586. In this case, the undisputed facts permitted the trial court, and permit us as well, to decide the merits.

As with all contract claims we begin our analysis by considering the language of the document in question. See Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003). The TPP Agreement is captioned "HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN (Step One of Two-Step Documentation Process)." The first sentence of the Agreement's text states:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3.

In turn, Section 3 provides, in pertinent part, that the Servicer will determine the amounts of unpaid interest and other charges to be added to the loan balance and determine "the new payment amount." This section then repeats that:

> If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature.
>
> [(Emphasis added).]

Significantly, Section 2 of the TPP Agreement required plaintiffs to make three trial period payments of $1860 each, by the specified due dates of October 1, 2009, November 1, 2009,

and December 1, 2009.  Paragraph 2A notified plaintiffs, in capital letters, that "TIME IS OF THE ESSENCE under this Plan." Paragraph 2 defined the "Modification Effective Date" as the first day of the month following the month in which the last payment was due (in this case, January 1, 2010).  Paragraph 2F unambiguously stated that:

> If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.
>
> [(Emphasis added).]

Paragraph 2G further put plaintiffs on notice that the TPP itself was not a loan modification and their failure to strictly comply with the terms of the TPP would result in denial of a loan modification:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

A-4599-12T1

[(Emphasis added).]

Based on our reading of the TPP Agreement, we conclude that it was "a unilateral offer," pursuant to which the bank promised to give plaintiffs a loan modification, <u>if and only if</u> plaintiffs complied fully and timely with their obligations under the TPP, including making all payments timely and providing documentation establishing that the financial representations they made to the bank in applying for the TPP were accurate when made and continued to be accurate. <u>See</u> <u>Wigod</u>, <u>supra</u>, 673 <u>F.</u>3d at 562; <u>Young</u>, <u>supra</u>, 717 <u>F.</u>3d at 234. Thus, plaintiffs were required to demonstrate that, despite their inability to make their regular mortgage payments, they were at least financially reliable enough to make timely payments in the reduced amount stated in the TPP Agreement. And, they were required to document the representations they had made to the bank, showing that they had the other necessary qualifications for a modified loan.[5]

---

[5] As <u>Wigod</u> noted, in 2009, the HAMP program allowed servicers to extend TPP agreements without initially verifying the applicants' representations as to their financial circumstances. The verification would then take place during the trial period. <u>Wigod</u>, <u>supra</u>, 673 <u>F.</u>3d at 557. In 2010, the program was modified to require the servicers to verify the applicants' financial qualifications before giving them a TPP agreement. <u>Id.</u> at 557 n.2.

The summary judgment record clearly establishes that plaintiffs failed to comply with the payment schedule set forth in paragraph 2 of the TPP Agreement. The bank's account records show that instead of making three $1860 payments by the first of the month in October, November and December 2009, plaintiffs made a payment of $1860 payment on October 15, 2009, and a $930 payment on November 17, 2009. They paid nothing in December. Thus, they almost immediately breached the terms of the TPP Agreement by failing to make either timely or sufficient payments. Indeed, for the three month period alone, their payments were short by $2790. They failed to make any payment in January. Assuming the trial period continued in January, they were required to pay another $1860 on January 1, 2010, making a total of $4650 then due and owing.

On January 20, 2010, the bank sent Arias a letter informing him that the bank had not received all of the required TPP payments, and had not received certain required financial documentation. The letter gave him until thirty days from the date of the letter or January 31, 2010 "whichever is later," to make the required payments and submit the missing documents, failing which he would "not receive a Home Affordable Modification."

Thus, arguably, the letter extended the trial period to February 20, 2010. The bank's records show that on February 16, 2010, plaintiffs submitted a payment of $3720, which was not even equivalent to what they owed as of January 1, 2010. Indeed, by February 1, plaintiffs owed yet another $1860, bringing the total they owed to $6510.

On April 27, 2010, the bank sent Arias a letter notifying him that his loan was "not eligible for a Home Affordable Modification" because he "did not make all of the required Trial Period Plan payments by the end of the trial period." Even assuming that the TPP had been extended to February 20, 2010, the April 27, 2010 notice was entirely correct. Plaintiffs had engaged in a pattern of non-payment and inadequate payment which constituted a breach of the TPP Agreement and justified the bank in refusing to give them a loan modification.[6] On these facts, we find neither a breach of contract nor a breach of the duty of good faith and fair dealing. The duty of good faith and fair dealing "does not 'alter the terms of a written agreement.'"

---

[6] We are unimpressed with plaintiffs' reliance on unpublished opinions involving debtors who faithfully made their TPP payments but were denied a loan modification. Plaintiffs attempt to gloss over their breach of the Agreement, contending that they made payments after receiving the April 27 letter denying them a loan modification. However, even after being denied a loan modification, they had a continuing obligation to pay the mortgage and the bank had a right to accept those payments.

Glenfed Fin. Corp. v. Penick Corp., 276 N.J. Super. 163, 175 (App. Div. 1994) (citation omitted), certif. denied, 139 N.J. 442 (1995). Consequently, we affirm the order on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4599-12T1