**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4932-16T2

WELLS FARGO BANK, NA,

     Plaintiff-Respondent,

v.

CHRISTOPHER J. MOUNT,

     Defendant-Appellant.

_____

Argued December 17, 2018 – Decided January 28, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-008621-16.

Joseph Albanese argued the cause for appellant.

David G. Murphy argued the cause for respondent (Reed Smith, LLP, attorneys; Henry F. Reichner, of counsel; David G. Murphy, on the brief).

PER CURIAM

Defendant Christopher J. Mount defaulted on his home mortgage loan with plaintiff, Wells Fargo Bank, NA. Wells Fargo served defendant with a Notice of Intention to Foreclose, and defendant filed a Chapter 13 bankruptcy petition. During the pendency of the bankruptcy action, defendant negotiated a "Streamlined Modification" agreement with Wells Fargo. The Streamlined Modification was a proposed trial period plan (TPP), as explained in Wells Fargo's December 2014 letter, which included three monthly payments commencing February 1, 2015. The notice clearly stated Wells Fargo could extend the TPP prior to modifying the mortgage if, for example, defendant needed to clear "other liens" on the property, although it did not specify any particular lien. As an example, the letter stated defendant might need to provide "a subordination agreement from the other lenders, so that [Wells Fargo] can maintain [its] lien position . . . ."

Defendant began making payments under the TPP, and Wells Fargo served defendant with a letter and title report dated February 20, 2015. The letter stated Wells Fargo's mortgage was "not in first lien position," and required plaintiff to furnish a "completed subordination agreement" before the mortgage modification could be finalized. The title report showed there was a mortgage with Fulton Bank of New Jersey (Fulton), as well as a subordination agreement

2

recorded on the same date Wells Fargo's mortgage was recorded. The title report clearly provided that the Fulton mortgage was subordinate to Wells Fargo's mortgage. Additionally, the letter somewhat confusingly advised defendant he also was required to furnish a "Notice of Release of Mortgage or Discharge . . . ." On April 17, 2015, in an effort to have the Fulton mortgage discharged, defendant filed a modification of his bankruptcy petition, which provided for the release of the mortgage upon defendant's completion of payments to the bankruptcy trustee.

By letter two weeks later, Wells Fargo advised defendant that he needed to furnish "documented proof" the title issues were resolved "within ten business days," or defendant would no longer be eligible for a permanent loan modification. In June, the trustee advised Wells Fargo that defendant had made all payments, "subject to final review . . . ." Defense counsel advised Wells Fargo that the Fulton mortgage soon would be removed of record.

On August 20, 2015, however, Wells Fargo notified defendant that he was no longer eligible for assistance because of unspecified "title issues" with the property. On August 27, 2015, the county clerk received an executed release of the Fulton mortgage.

A-4932-16T2

Defendant continued to make timely TPP payments through February 2016. In March, Wells Fargo refused to accept any further payments and commenced a foreclosure action. Defendant filed an answer that included affirmative defenses and a counterclaim alleging, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, violations of federal regulations and consumer fraud. An amended case management order provided discovery would end on March 31, 2017, and all dispositive motions were to be filed thirty days prior to trial. Despite the ongoing litigation, Wells Fargo offered defendant another TPP plan in August 2016, which he refused.

Wells Fargo moved for summary judgment; defendant filed a cross-motion for summary judgment and a motion to compel discovery. After considering oral argument, the chancery judge granted Wells Fargo's motion and denied defendant's motions. Wells Fargo subsequently moved for final judgment, which the Foreclosure Unit entered on June 8, 2017. This appeal followed.

Defendant argues the judge should have granted his cross-motion for summary judgment because Wells Fargo breached its contract — the TPP — with defendant, had "unclean hands," and was equitably estopped from

A-4932-16T2

prosecuting the foreclosure. Alternatively, defendant claims the judge should have denied summary judgment to Wells Fargo because there were genuine factual disputes as to whether it breached the TPP. Lastly, defendant argues the judge should have granted his discovery motion. Having considered these arguments in light of the record and applicable legal principles, we reverse and remand for further proceedings consistent with this opinion.

We review the grant of summary judgment de novo, applying the same standard used by the trial judge, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute.

The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We have likened a TPP to "'a unilateral offer,' pursuant to which the bank promise[s] to give plaintiff[] a loan modification, if and only if plaintiff[] complie[s] fully and timely with [his] obligations under the TPP . . . ." Miller v. Bank of Am. Home Loan Servicing, LP, 439 N.J. Super. 540, 549 (App. Div. 2015) (quoting Arias v. Elite Mortg. Grp., Inc., 439 N.J. Super. 273, 279 (2015)). "[W]hen the issuance of a loan modification agreement is explicitly made contingent upon the evaluation and satisfaction of all prescribed conditions precedent within a TPP, . . . the declination of a lender to present a loan modification agreement may be actionable." Ibid. (citing Arias, 439 N.J. Super. at 276). "[T]he specific terms of the TPP govern the parties' agreement." Id. at 550.

When it moved for summary judgment, Wells Fargo's statement of undisputed material facts relied solely on the contents of the February, April and August 2015 letters to defendant, contending those documents demonstrated defendant "did not timely remedy the title issues." The chancery judge seemingly accepted this as an undisputed fact, noting simply that the Fulton

mortgage was not released until after Wells Fargo terminated the TPP. As a result, she concluded there was no breach of the TPP, and, since it was undisputed that defendant was in default of the mortgage, summary judgment was appropriate.[1]

However, as we have demonstrated, the documents that set the terms of the TPP are confusing, at best. The February 2015 letter says defendant was required to obtain both a subordination agreement for the Fulton mortgage, and a "Notice of Release," because Wells Fargo's mortgage was not a first lien on the property. In fact, Wells Fargo's own title report demonstrated its mortgage was a first lien. Although it is undisputed that defendant made other attempts to have the mortgage actually discharged, Wells Fargo's April letter and the final August 2015 letter simply stated, without specificity, that defendant failed to clear title to the property.

Defendant's motion to compel discovery was an attempt to flesh out the contacts that took place between Wells Fargo and himself, and to depose the bank's representatives in charge of the modification process. This was relevant evidence, given federal regulations that obligated Wells Fargo to give defendant

---

[1] It is apparently undisputed that if the TPP payments were applied to defendant's account under the original terms of his mortgage with Wells Fargo, he would be in default as of January 2014.

A-4932-16T2

"a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the [TPP] . . . ." 12 C.F.R. 1024.41(e)(2)(ii). It was also potentially relevant to demonstrate whether Wells Fargo, which was servicing the mortgage for Freddie Mac, complied with that association's guidelines, which, at the time, required the servicer to "work with the [b]orrower . . . to obtain any court and/or trustee approvals required[,]" and suggested that mortgagees "should extend" a TPP period to assist mortgagors in fulfilling their obligations, but for no more than one year. Freddie Mac Servicing Guidelines, § 9205.10(b) (2017) (removed 2018).

In short, we do not think the facts were so one-sided as to compel summary judgment in favor of Wells Fargo as a matter of law. Brill, 142 N.J. at 533. We reverse the order granting Wells Fargo summary judgment. [2]

---

[2] The order granting Wells Fargo summary judgment dismissed defendant's counterclaims with prejudice. Defendant's brief asserted no argument regarding other causes of action in his counterclaim, e.g., violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -210. Nor did the brief address whether alleged violations of regulations and guidelines in the counterclaim are cognizable independent causes of action. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011). We affirm the order dismissing all of defendant's counterclaims except breach of contract, breach of the implied covenant of good faith and fair dealing, and the equitable defenses of "unclean hands" and equitable estoppel.

A-4932-16T2

Defendant contends we should also reverse the order that denied his motion for partial summary judgment because he established as a matter of law that Wells Fargo breached the TPP, and because it initiated the foreclosure suit with "unclean hands."  We think it is obvious from our prior discussion that material questions of fact exist, and, therefore, defendant's motion for partial summary judgment was properly denied.  We affirm the judge's separate order that denied defendant's motion for partial summary judgment.

In light of our decision, we remand the matter to the trial court, which shall reconsider defendant's motion for additional discovery and rule on those requests in the context of the current posture of the case before the court.  In that regard, we consider what is the appropriate remedy should defendant prevail.

In GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 177-78 (2017), the mortgagor entered into a mediated settlement with the mortgagee to save her home from foreclosure.[3]  Although she complied, the mortgage servicer attempted to modify the settlement agreement. Id. at 178.  When the mortgagor refused to execute the new proposed agreement, the mortgagee initiated foreclosure proceedings that ultimately led to the sale of the property at a sheriff's sale. Id. at 180.

---

[3]  Willoughby was decided after the proceedings in this case.

The Court concluded that the mediated settlement agreement was a binding contract that, based upon the mortgagor's performance, compelled the permanent modification of her mortgage in accordance with the terms of the agreement. Id. at 186, 188-89. Recognizing that the mortgagor might "not be entitled to specific performance" if the property had been sold to a "good faith purchaser" in the interim, the Court remanded the case so "the chancery court [may] fashion a suitable and equitable remedy[,]" including damages for the mortgagee's "breach of contract." Id. at 189-90.

Here, we do not know what has transpired since entry of the final judgment of foreclosure, nor can we predict the outcome of the remand and whether defendant will prevail on his counterclaim. Even if defendant does prevail, the equities of the moment might dictate that the final judgment of foreclosure not be disturbed. Defendant's recovery may be limited to proven financial damages or some other appropriate remedy fashioned by the chancery judge at that time. Id. at 189. Therefore, we do not vacate the final judgment of foreclosure.

Reversed in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4932-16T2