**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4275-18T4

JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION,

    Plaintiff-Respondent,

v.

SUNIL SHIVARAM,

    Defendant-Appellant,

and

PURNIMA SHIVARAM, MRS.
SHIVARAM, WIFE OF SUNIL
SHIVARAM,

    Defendants.

_____

Submitted January 28, 2020 – Decided March 3, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-028037-17.

Sunil Shivaram, appellant pro se.

Bertone Piccini, LLP, attorneys for respondent (Cristina Z. Sinclair, of counsel and on the brief).

PER CURIAM

In this residential-mortgage-foreclosure action, defendant Sunil Shivaram appeals from a June 11, 2018 order that struck his answer, dismissed his counterclaims, and directed a default to be entered against him and his wife.[1] He also appeals from a May 1, 2019 final judgment of foreclosure. Defendant argues that he was not in default and that the bank had agreed to give him a loan modification. Neither of those arguments are supported by the material facts in the record and, therefore, we affirm.

I.

In November 2006, defendant and his wife signed a home equity line of credit agreement (Note) with JPMorgan Chase Bank, N.A. (the Bank). The Note had a credit limit of $350,000 and defendant apparently borrowed the full amount. Defendant and his wife also signed a Mortgage, pledging their residential property as security for repayment of the Note. The Mortgage was recorded.

---

[1] The order and judgment were also against defendant's wife, but she failed to file a brief or participate on this appeal.

The Note states that defendant would pay any loan on a monthly basis. The Note also contained a "Termination and Acceleration" provision that stated that if defendant failed to pay on a monthly basis, he could be required "to pay [the Bank] the entire outstanding balance in one payment."

The Mortgage also contained an acceleration provision. Consistent with the Note, the Mortgage stated that if the borrower did not meet the repayment terms of the Note, the Bank had the right to "Accelerate Payment" by requiring the borrower to "pay immediately the entire amount then remaining unpaid under the [Note and Mortgage]."

In late 2011, defendant contacted the Bank to request a modification of his loan. The Bank sent a letter in December 2011, telling defendant he could apply for a loan modification under the federal Home Affordable Modification Program (HAMP). Defendant applied for a HAMP modification and contends that on July 31, 2012, the Bank approved him for a three-month trial period. Three days later, however, on August 2, 2012, defendant acknowledged that the Bank informed him that he was not qualified for a HAMP loan modification.

From 2013 through 2015, defendant continued to communicate with the Bank regarding a loan modification. No loan modification was approved by the

A-4275-18T4

Bank.  Indeed, defendant acknowledged that he rejected a loan modification proposed by the Bank in December 2012.

In May 2017, the Bank sent defendant a notice of intent to foreclose and in December 2017, the Bank filed a complaint for foreclosure.  Defendant responded by filing an answer, with one affirmative defense, and three counterclaims.  In his affirmative defense, defendant claimed that he had until November 2, 2036, the "Maturity Date" to pay the loan.  As counterclaims, defendant asserted (1) the Bank had never intended to give him a loan modification and it had wasted his time and money in having him submit applications for a modification; (2) the Bank had engaged in "deceptive business practice[s]" and "harass[ment]"; and (3) the Bank took large loans from the federal government, which were designed to be passed through to assist borrowers, but the Bank did not act in good faith with its borrowers.  Thus, defendant demanded $20,000 for his time and expenses in applying for loan modifications, $1 million in compensatory damages, and "$2.5 billion" in punitive damages.

The Bank moved to strike defendant's answer and affirmative defense and dismiss his counterclaims. After considering defendant's opposition, the Chancery court granted the Bank's motion.  On June 11, 2018, the court entered

an order striking defendant's answer, dismissing his counterclaims, and directing that default be entered against defendants. The court explained the reasons for its rulings in a written opinion issued with its order. Approximately one year later, on May 1, 2019, a final judgment of foreclosure was entered.

II.

Defendant appeals and makes two arguments. He argues that the Note did not contain an acceleration provision and his loan repayment is not due until the maturity date, which is November 2, 2036. In addition, he contends that the Bank agreed to provide him with a HAMP loan modification. Neither of these arguments find any support from the material undisputed facts in the record.

We use a de novo standard in reviewing an order dismissing pleadings under Rule 4:6–2(e). Printing Mart–Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989). Accordingly, we examine the adequacy of the pleading, considering "whether a cause of action is 'suggested' by the facts." Printing Mart, 116 N.J. at 746 (quoting Velantzas v. Colgate–Palmolive Co., 109 N.J. 189, 192 (1988)). Moreover, no special deference is afforded the trial court's "interpretation of the law" or "the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994). A party seeking to foreclose must demonstrate "execution, recording, and non-payment of the mortgage . . . ." Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952). In addition, the foreclosing party must "own or control the underlying debt." Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 222 (App. Div. 2011) (quoting Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011)).

The record in this case establishes that the Mortgage was valid, the Bank had recorded the Mortgage, and defendants owed the Bank several hundred thousand dollars in loans. There is also no dispute that the Bank owned and possessed both the Note and Mortgage.

Defendant argues that the Bank had no right to accelerate the loan when he stopped making payments. The Mortgage, as well as the Note, expressly state that the Bank had the right to accelerate the loan and demand a full payment of the outstanding amount of indebtedness. As already summarized, both the Mortgage and Note contained acceleration provisions, which had clear language

6

explaining that the Bank could accelerate any outstanding indebtedness if defendant defaulted by not making timely and full monthly payments.[2] Defendant does not dispute that he has not made full payments under either the Note or Mortgage since at least July 2012.[3]

Defendant also argues that the Bank effectively agreed to modify his loan. In that regard, he contends that the Bank agreed to a three-month trial period and then informed him that he was not qualified for a HAMP loan modification. There are several flaws with defendant's argument.

First, defendant did not make this argument in his counterclaim or before the Chancery court. In his counterclaim, defendant contended that the Bank never intended to give him a loan modification and, therefore, he wasted his time and money in applying for modifications. Generally, we do not consider

---

[2] In his appendix, defendant submitted two notes from other borrowers of the Bank. In its brief, the Bank pointed out that those notes were not properly part of the appendix because they were not submitted to the Chancery court. Defendant responded by filing a motion to supplement the record. We initially deferred ruling on that motion until this matter was considered on its merits. We now deny the motion and strike the portion of defendant's appendix that contained the notes signed by other borrowers.

[3] In its complaint, the Bank alleged that defendants defaulted in July 2012. Defendant may have ceased making monthly payments before that time. The material undisputed fact for purposes of this appeal is that defendant has been in default since at least July 2012 and has not cured that default.

on appeal arguments that were not raised in the trial court. See State v. Robinson, 200 N.J. 1, 20 (2009) ("[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.") (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Second, even if we were to accept the allegations made by defendant, they do not support a finding that the Bank committed to a loan modification. HAMP does not confer on borrowers a private cause of action. See Miller v. Bank of Am. Home Loan, 439 N.J. Super. 540, 543 (App. Div. 2015); Arias v. Elite Mortg. Grp., Inc., 439 N.J. Super. 273, 276 (App. Div. 2015). We, however, have held that HAMP does not pre-empt valid state law claims when a bank offers a temporary trial plan under the HAMP program and the borrower complies with that temporary plan. See Miller, 439 N.J. Super. at 549; Arias, 439 N.J. Super. at 279.

Defendant submitted no evidence that the Bank committed to a trial plan that would lead to a HAMP loan modification. Instead, defendant alleges that the Bank informed him that he was qualified for a three-month trial period on July 31, 2011. Defendant goes on to contend that on August 2, 2011, that is

three days later, the Bank informed him that he was not qualified for a HAMP loan modification. Consequently, defendant did not complete the three-month trial period and he has provided no evidence that the Bank sent him a binding written loan modification commitment. The applicable statute of frauds requires a writing signed by a lender if a loan exceeds $100,000. N.J.S.A. 25:1-5(f), (g). Those statutory provisions apply to a loan modification. See Nat. Cmty. Bank of N.J. v. G.L.T. Indus, Inc., 276 N.J. Super. 1, 4 (App. Div. 1994). Consequently, our holdings in Arias and Miller do not support any claim by defendant.

Third, defendant's actions establish that he did not rely on the discussions of a loan modification in 2011. In that regard, he certified that he continued to negotiate with the Bank on other modifications over the next several years. He also acknowledges that in December 2012, the Bank sent him a different modification proposal that he rejected. Consequently, defendant cannot show that he relied on the possible HAMP loan modification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4275-18T4