BAYVIEW LOAN SERVICING v. BAXTER
2023 OK CIV APP 12
530 P.3d 89
Case Number: 120548
Decided: 03/24/2023
Mandate Issued: 04/20/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2023 OK CIV APP 12, 530 P.3d 89

 

BAYVIEW LOAN SERVICING, LLC, Substituted Plaintiff/Appellee,
v.
IVA CHARLINE BAXTER; JOHN DOE, Spouse of Iva Charline Baxter, if Married; and OCCUPANTS OF THE PREMISES, Defendants,
BRIAN BAXTER
THE HEIRS, PERSONAL REPRESENTATIVES, DEVISEES, TRUSTEES, SUCCESSORS AND ASSIGNS OF IVA CHARLINE BAXTER, DECEASED, and THE UNKNOWN SUCCESSORS, Additional Defendants.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE THAD BALKMAN, TRIAL JUDGE

VACATED AND REMANDED

Brian J. Rayment, KIVELL, RAYMENT & FRANCIS, P.C., Tulsa, Oklahoma, for Substituted Plaintiff/Appellee

James S. Matthews, Jr., Oklahoma City, Oklahoma, for Defendants/Appellants

GREGORY C. BLACKWELL, PRESIDING JUDGE:

¶1 Bryan and Amanda Baxter appeal a summary judgment of the district court granting foreclosure of a mortgage in favor of the appellee, Bayview Loan Servicing, LLC. On review, we find that the Baxters raised questions of material fact as to a possible equitable defense to foreclosure that should have prevented summary judgment. As such, we vacate the judgment and remand for further proceedings consistent with this opinion.

BACKGROUND

¶2 In 1994, Anna Tippie executed a note and mortgage in favor of Bank of America in the amount of $28,750. Anna died, and, in 2010, Iva Baxter purchased the property from her estate and assumed the obligations of the note. During her life, Iva lived at the property with Bryan and Amanda Baxter, who are now married. Iva also died, and payments on the note ceased as of October 2012. Bryan claims the property as Iva's sole heir or as the grantee of a deed from Iva.

¶3 In 2014, Bank of America filed a petition seeking foreclosure of the mortgage. They declared that the note had been accelerated as of September 2012 and that $19,025.79 of principal remained due. They sought a judgment for this amount, plus interest, costs, and attorney fees. The Baxters answered, alleging various affirmative defenses, including that Bank of America should be estopped from foreclosing for failure to consider the Baxters for federally mandated foreclosure alternatives.

¶4 Nothing further is shown in the record until 2016. At that time, Bayview, who purchased the note and mortgage from Bank of America in 2015, filed a motion for summary judgment on the foreclosure.

¶5 Bryan and Amanda filed an objection to the summary judgment motion, supported by affidavit. According to the Baxters, shortly after Iva's death, Amanda contacted Bank of America inquiring how to continue payments and, if possible, how to reduce the monthly payment. Although she told Bank of America they were "ready, willing and able to continue the monthly payment," a bank representative informed her that a modification could be arranged under federal law, but only if the couple first defaulted on the then-current note.

¶6 At the end of 2015 or beginning of 2016, the Baxters were contacted by Bayview. They spoke with Mr. John Kazinski, who disclaimed all knowledge of any modification process between the Baxters and Bank of America. He stated the Baxters would have to submit another application for a modification but offered that Bayview was developing a new "assumption plan," and would contact the Baxters by the end of May 2016. Amanda alleged that she followed up with Mr. Kazinski on several occasions but was told that the new program was not yet in effect. Bayview filed a motion for summary judgment on May 2, 2016.

¶7 No ruling was ever made on the 2016 motion for summary judgment and Bayview did not proceed with it further while it attempted to work out a modification with the Baxters, as detailed in the following paragraph. In February 2019, Bayview withdrew their 2016 motion and filed a new motion for summary judgment.

¶8 The Baxters responded to the new motion with additional testimony by affidavit. They related a confusing and opaque series of interactions related to an attempted modification, involving as many as eight different asset managers at Bayview. Amanda offered that they filled out several applications on forms provided by Bayview. On numerous occasions, Bayview informed them that an application was incomplete but did not tell them why it was incomplete or what additional information they needed to provide. When their asset manager changed, they were sometimes told that their previous applications for modification could not be found or had been made on the wrong forms, all of which were provided by Bayview.

¶9 One asset manager, Ms. Goodell, informed the Baxters that their application had been approved, and they must now make three monthly "good faith" payments of $660.31 each. This offer was presented, first orally, but then in a letter from Bayview to the Baxters, dated October 17, 2017.

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to permanently modify your mortgage.

If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification with an interest rate of 7.875%, which will be fixed for 40 years from the date the modification is effective. If we determine that the unpaid balance of your Mortgage is more than 100% of the value of your home, you will be eligible to have up to 30% of your principal balance deferred, and the deferred amount will not be subject to any interest rate charges. Moreover, the deferred principal amount will not be due and payable until the earlier of (i) the end of the 40-year term of the modified mortgage, (ii) any sale or transfer of your interest in the property, or (iii) a refinance of your mortgage loan.

After successful completion of your Trial Period Plan, and once your loan is permanently modified, there is no prepayment penalty for paying more than the amount due, and you can always pay more if you want to reduce your principal balance more quickly. However, you will not be permitted to pay any less than the required payment.

R., Doc. 11, First Supplement to Objection, pg. 12 (emphasis supplied).

¶10 The Baxters responded in a letter dated October 28, 2017, signed by both Amanda and Bryan, accepting the terms of the offered modification. It states:

Per our conversation with Greg Sergaent and Brenda Goodell; I, Amanda Lynn Medina-Baxter & Paul Bryan Baxter ... accept the offer of modification from Bayview Loan Services, LLC effective immediately.

According to the agreement the first payment of the trial period will be due 1Dec17 [sic] in the amount of $680.37 and these payments will be due in each month of December 2017, January 2018, February 2018 before a final offer of modification is declared.

We accept these terms and payments.

Id. at 9.

¶11 The Baxters averred that they made each of the required payments, and the record includes two letters from Bayview acknowledging such payments. They each state:

Thank you for making your final trial payment. Your Loan has been assigned to a Modification Specialist to process and deliver to you all the paperwork necessary to complete your permanent modification.... We will continue to communicate with you every fifteen (15) calendar days until the paperwork has been sent.... While we work to generate the paperwork necessary to complete the modification, please continue making your monthly trial payments in order to avoid falling behind during the processing period. If you do not continue making payments, it may prevent or delay the completion of your final modification.

Id. at 10 (letter dated March 13, 2019); R., Doc. 9, Preliminary Objection to Motion for Summary Judgment, pg. 13 (letter dated April 19, 2018). The Baxters were also informed by Bayview that they needed a title evaluation as part of the assumption and to obtain insurance on the home in their name. They claim to have done both of these things. The Baxters were informed by Ms. Goodell that they were "heading for closing on the assumption" in March or April 2018.

¶12 After March 2018, the Baxters were unable to reach Ms. Goodell. After several calls, they were told that Ms. Goodell no longer worked for Bayview. Their new asset manager informed them that he could find no assumption documentation on file, and they would have to start the process again. They were sent a new form, but it was not for an "assumption" but for another "modification." They queried this but were told that it was the correct form. In April 2018, however, the Baxters received a letter stating that a Freddie Mac modification had already been denied because they "did not accept the offer for a foreclosure alternative within the required time frame." R., Doc. 11, First Supplement to Objection, pg. 26 (Exhibit Z). The Baxters denied ever receiving, let alone rejecting, any such offer.

¶13 In response, Bayview did not dispute this testimony, but argued that neither Bank of America's actions nor its own created any viable defense to the foreclosure. They cited Bank of Am., N.A. v. Moody, 2014 OK CIV APP 105352 P.3d 734

¶14 In February 2020, the court heard oral arguments, though no transcript is included in the record. The district court granted summary judgment to Bayview in April 2020. The Baxters appeal.

STANDARD OF REVIEW

¶15 Summary judgment settles only questions of law and is therefore reviewed de novo. City of Jenks v. Stone, 2014 OK 11321 P.3d 179Id. It will be reversed if reasonable people might reach different conclusions from the undisputed material facts. Id.

ANALYSIS

¶16 Bayview's briefing below was primarily focused on the question of whether the Baxters could defend against a foreclosure solely on the basis that Bayview failed to follow the requirements of the various federal mortgage modification programs. We agree with Bayview, and a chorus of state and federal courts, See Moody, 2014 OK CIV APP 105

¶17 It does not follow, however, that a bank that promises a modification does not create enforceable rights for the borrower under state law. Bayview's focus on the question of entitlement to a modification under federal law entirely misses the point and invites an unwarranted extension of Moody. We must determine not whether the Baxters have an enforceable entitlement to a loan modification under federal law--they do not and never did--but the legal consequences of Bayview's promise of a modification under state law.

¶18 The Baxters presented a colorable claim that Bayview presented them with an unqualified offer to modify the loan Bayview was seeking to foreclose and that the Baxters accepted the offer and performed, or stood ready to perform, their duties under the contract. We agree with other courts that have found that, as a matter of state law, this offer and acceptance created private contractual or quasi-contractual rights between the parties.

¶19 One frequently cited case with which we agree is Wigod v. Wells Fargo Bank, NA, 673 F.3d 547, 565 (7th Cir. 2012). Applying Illinois law, which we do not find to be materially different from Oklahoma law in any relevant respect, the court held that the offer and acceptance of the same type of "Trial Period Plan" (which it called the TPP) at issue in this case created an enforceable contract for modification between the servicer and the borrower based in state law. The court said:

In two different provisions of the TPP [Trial Period Plan] Agreement, paragraph 1 and section 3, Wells Fargo promised to offer Wigod a permanent loan modification if two conditions were satisfied: (1) she complied with the terms of the TPP by making timely payments and disclosures; and (2) her representations remained true and accurate. Wigod alleges that she met both conditions and accepted the offer, but that Wells Fargo refused to provide a permanent modification.

Id. at 560--61.

¶20 The Wigod court held that the servicer's offer and the borrower's acceptance and performance were sufficient to claim a contract between servicer and borrower under state law. Id. at 566. The court also found the borrower stated, on facts quite similar to those in this case, "a facially plausible claim of promissory estoppel." Id. The Wigod court specifically noted that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." Id. at 581. "To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." Id.

¶21 In another similar case, Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 234 (1st Cir. 2013), borrowers alleged that the lender "reassured [her] that the Modification Agreement would be continued under its previous terms" but the bank "breached the contract by attempting to unilaterally modify it, and charge a higher monthly modified mortgage payment." Id. 232. Similar to Wigod, the court found that a contract had been created under Massachusetts law and that a reasonable person would interpret the offer of the temporary payment plan as a definitive agreement to provide a permanent modification under the previous terms if the borrowers made the required payments. Id. at 234 ("The TPP's plain terms therefore required [the mortgagee] to offer [the mortgagor] a permanent modification.").

¶22 In sum, the principle that a mortgagor's actions made in the course of attempting a loan modification may support claims made under state law--regardless of whether or not those actions also violate federal law--is widely accepted.

¶23 The remaining question is whether such a claim may provide a viable defense in a foreclosure action or is simply a claim to be brought against the lender as a counterclaim or in an unrelated civil suit. For the following reasons, we hold that a borrower can raise a state-law right to a modification agreement as a defense to foreclosure.

¶24 Foreclosure is nominally based in contract, but the proceedings are equitable in nature, and equitable defenses can apply. "'The foreclosure of a mortgage is equitable in its nature, although based on legal rights, and it is the province of a court of equity to see to it that a party invoking its relief shall have dealt fairly, before relief is given.'" Murphy v. Fox, 1955 OK 1278 P.2d 820quoting Germania Life Ins. Co. v. Potter, 124 A.D. 814, 109 N.Y.S. 435 (App. Div. 1908)). Although the "power should be exercised only sparingly," a foreclosure action "is an equitable proceeding and the trial court may refuse to accelerate a note on equitable grounds ...." Igleheart v. Warrington, 1995 OK CIV APP 15891 P.2d 619Deutsche Bank Nat'l Tr. Co. v. Rice, 2021 OK CIV APP 21493 P.3d 1043Mefford v. Oklahoma City ex rel. Simpson, 1945 OK 36155 P.2d 523

¶25 In this case, on summary judgment, Bayview rested on its argument that both its and its predecessor's behavior leading up to and following acceleration was irrelevant. They insisted that foreclosure was available even if they had made and the Baxters had accepted or would have accepted the promised modification. The trial court accepted this argument and entered summary judgment against the Baxters. However, the Baxters assertion of an agreement or enforceable promise to modify the note created a question of material fact as to whether the Baxters held a viable defense to foreclosure under Oklahoma law. Summary judgment was therefore not appropriate.

CONCLUSION

¶26 The trial court granted judgment on the basis that no viable defense to foreclosure was possible. However, the current record, when viewed in the light most favorable to the Baxters, shows possible defenses to foreclosure based in the Baxters' contractual or quasi-contractual right to modify under state law. Because the request for summary judgment should have been denied, that judgment is vacated and the matter is remanded for additional proceedings consistent with this opinion.

¶27 VACATED AND REMANDED.

FISCHER, J., and WISEMAN, J. (sitting by designation), concur.

FOOTNOTES

Objection to Motion for Summary Judgment, pg. 2. However, another document states that Iva transferred the property to Bryan "by the attached deed." R., Doc. 9, Preliminary Objection to Motion for Summary Judgment, pg. 1, 6. There is no attached deed, but only sales data from the county assessor that references a "Death Affidavit." Resolution of this issue is not material to this appeal.

or default is reasonably foreseeable. See Making Home Affordable Program, Handbook for Servicers of Non--GSE Mortgages (Version 5.3), pg. 71, (hereafter "Handbook") (available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mha?handbook_53.pdf (last accessed March 8, 2023)).

See 12 U.S.C. §5211; see also Eldridge, 2012 OK 24Moody, ¶ 8. This case first involved HAMP, and later other modifications appear to have been offered under federal law, including a "Freddie Mac Flex Modification." Because our holding is based on state law and not any right under federal law to any available federal modification, the details of (and any distinctions between) the different programs are not material.

See, e.g., Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012) (holding that HAMP provides no express or implied individual right of action) and Edwards v. Aurora Loan Servs., LLC, 791 F. SupP.2d 144, 151 (D.D.C. 2011) (holding borrower had no due process rights under HAMP and rejecting third-party beneficiary contract theory).

Wigod and Young, supra, follow this principle. See Arias v. Elite Mortg. Grp., Inc., 108 A.3d 21, 24 (N.J. Super. Ct. App. Div. 2015); Miller v. Bank of Am. Home Loan Servicing, L.P., 110 A.3d 137, 143 (N.J. Super. Ct. App. Div. 2015); Hernandez v. Wells Fargo & Co., C 18-07354 WHA, 2019 WL 2359198, at *3 (N.D. Cal. June 3, 2019) (HAMP's lack of a private federal right of action does not automatically preclude state-law claims that refer to or incorporate Wells Fargo's failures in meeting HAMP's requirements); Mik v. Fed. Home Loan Mortgage Corp., 743 F.3d 149, 166 (6th Cir. 2014) (citing Wigod and holding that, although violation of Protecting Tenants at Foreclosure Act (PTFA) did not provide tenants with federal cause of action for unlawful eviction after foreclosure, tenants could use such violations to establish the elements of a state law cause of action for tort of wrongful eviction); Belcher v. Ocwen Loan Servicing, LLC, 8:16-CV-690-T-23AEP, 2018 WL 1701963, at *14 (M.D. Fla. Mar. 9, 2018), report and recommendation adopted in part, Belcher v. Ocwen Loan Servicing, LLC, 8:16-CV-690-T-23AEP, 2018 WL 1701964 (M.D. Fla. Apr. 2, 2018) (recommending certification of class in fair debt collection practices suit alleging practice of sending notice to customers threatening foreclosure or the incurrence of additional fees on outstanding loan amounts while such activities were prohibited by HAMP modification program violated the FDCPA).

Lacy v. Wozencraft, 1940 OK 383105 P.2d 781

both Iva Baxter and Paul Bryan Baxter. In every case, the salutation is: "Dear Customer." It is undisputed that Bayview had, for several years, negotiated with the Baxters--Amanda and Bryan--to modify the loan in question, and Amanda claims to have informed Bayview of Iva's death in her first interaction with them in 2012. Under such circumstances, Bayview may be estopped from claiming that it believed it was corresponding with the deceased Iva Baxter. Summary judgment on this basis was also inappropriate.