John McCAUGHEY, Guardian and Next Friend of Nettie Whitt, an Incompetent, Plaintiff in Error,

v.

Anna L. LESTER and W. H. Lester, Defendants in Error.

No. 35588.

Supreme Court of Oklahoma.

Dec. 14, 1954.

Rehearing Denied Jan. 18, 1955.

Chas. E. Jackson and Haskell Paul, Pauls Valley, for plaintiff in error.

O. B. Moody, R. V. Kennemer, Jr., Lindsay, for defendants in error.

HALLEY, Chief Justice.

Nettie Whitt, formerly Snider, is a member of the Choctaw tribe of Indians of one-eighth degree of Indian blood. This suit is brought by John McCaughey as her guardian and next friend against Anna L. Lester and W. H. Lester, her present husband. Anna L. Lester is the step-mother of Nettie Whitt, having been the wife of Samuel T. Snider, long since deceased. Nettie Whitt was born October 28, 1896. Her father, Samuel T. Snider was appointed her legal guardian on November 10, 1906 and was not discharged as such until April 18, 1916. On May 1, 1915, Nettie Whitt, then Snider, executed a deed to her father to sixty acres of her allottment in Garvin County, Oklahoma, described as the west half of the Southeast Quarter of the Northeast Quarter and the Southwest Quarter of the Northeast Quarter of Section 36, Township 4 North, Range Four West of the Indian Meridian. In June 1915, Nettie Snider married Big Son Whitt by whom she had two children. On March 22, 1919, Nettie Whitt filed a suit in the District Court of Garvin County against her father, Samuel T. Snider, for the recovery of the above described land through her attorneys, Rennie and Garrison. This action was tried on the 27th of November, 1920, and judgment was entered for the defendant Samuel T. Snider and Nettie Whitt took nothing. This judgment was never appealed from and has never been challenged in any way until the filing of the case at bar on March 29, 1950. This suit sought to set aside the deed that Nettie Whitt made to her father on the grounds that she was incompetent at that time.

If the judgment rendered on November 27, 1920 was a valid judgment and if it is res adjudicata as to the suit filed in 1950,

it would not be necessary to consider the question of Nettie Whitt's mental capacity when she executed the deed to her father on May 1, 1915, so we will consider those matters first.

This was not an action to vacate the judgment of November 27, 1920. At best it is a collateral attack on that judgment and not a direct attack. We held in Blair v. Blair, 124 Okl. 128, 254 P. 38, that a judgment against an insane person is not void, but voidable and that it may be vacated on direct attack, but in the absence of fraud, is not subject to collateral attack. We have searched the record in this case and we have found no evidence that would show fraud in obtaining the judgment of November 27, 1920. The plaintiff in that case, Nettie Whitt, was represented by counsel. She took the witness stand in her own behalf. There is nothing to show that Samuel T. Snider thought that his daughter was insane or of unsound mind and no one had the temerity at that time to even suggest it. The judgment entered on the 27th of November, 1920 has not been set aside and is a binding and valid judgment.

The plaintiff takes the position that the aforementioned judgment was not res adjudicata as to the case at bar. We are of the opinion that it is. Anna L. Lester took the land in question by virtue of the will of Samuel T. Snider and such property was distributed to her by the County Court of Garvin County on January 5, 1933. Anna L. Lester, then Snider, succeeded to all right, title and interest in the land in question that Samuel T. Snider had.

The relief prayed for in the suit filed in 1919 and that filed in 1950 is the same for all practical purposes. The prayer in the petition in the 1919 action is as follows:

"Wherefore the plaintiff prays that she have judgment declaring said deed and mortgages be void and that the defendant, Samuel T. Snider be ordered to reconvey said land to the plaintiff and that defendant corporation be ordered to release said mortgages, and that the plaintiff recover possession of said land and all costs in this action laid out and expended."

The petition in the case at bar is as follows:

"Wherefore plaintiff prays that each of said defendants be required to answer in this cause and set forth the nature and extent of any interest claimed by them in said premises and that upon final determination hereof, that the said Nettie Whitt be adjudged and decreed the owner of all the right, title and interest in and to said

"West Half (W½) of the Southeast Quarter (SE¼) of the Northeast Quarter (NE¼) and the Southwest Quarter (SW¼) of the Northeast Quarter (NE¼) of said Section Thirty-six (36), Township Four (4) North, Range Four (4) West of the Indian Meridian

"and that all right, title, claims or demands of each and every of said defendants be adjudged and decreed junior and inferior to the right, title and interest of the said Nettie Whitt and that her title be quieted as against each and every of said defendants and that she be restored to possession of said premises and that each and every of said defendants be thereafter perpetually barred and enjoined from asserting any right, title, claim or demand in or to said premises adverse to the said Nettie Whitt.

"That the plaintiff recover his costs in this action and such other and further relief as the court may find plaintiff justly entitle."

During the progress of the trial of this case, the plaintiff's counsel amended their petition to claim that Samuel T. Snider was holding the land deeded to him by Nettie in trust for her. We do not consider that this was any material change in the cause of action and the following is a part of the prayer in the plaintiff's last amended petition:

" * * * and plaintiff prays that the court decree that the said Anna L. Lester is constructive trustee for the use and benefit of the plaintiff Nettie Whitt; and plaintiff further prays that the court enter its decree ordering and

directing said defendant Anna L. Lester to execute a deed of conveyance to said lands to this plaintiff or her legally appointed guardian; and that in the event of such failure, neglect or refusal to so convey that this decree shall operate as such conveyance; * * . *."

 The causes of action in these two cases are clearly identical. We said in Rhodabarger v. Childs, 120 Okl. 88, 250 P. 489, that:

"Judgment is a bar if the cause of action be the same, though the form be different. The cause is the same when the same evidence will support both actions, or, rather, the judgment in the former action will be a bar provided the evidence necessary to sustain the judgment for the plaintiff in the present action would have authorized a judgment for him in the former."

This is a well recognized rule as shown in 50 C.J.S., Judgments, § 648, at page 88. The judgment in the former action is a bar to the present suit because the evidence necessary to sustain the judgment for the plaintiff in the present action would have authorized a judgment for Nettie Whitt in the former. A test sometimes used to determine whether there is an identity of causes of action is to inquire whether the judgment sought will be inconsistent with the prior judgment and if such inconsistency is shown the prior judgment is a bar. If Nettie Whitt had been successful in this last case the rights of the defendant Anna L. Lester would have been completely destroyed and the benefits to her under the original case wholly wiped out.

 The chief contention of counsel for plaintiff is that Nettie Whitt was incompetent when she executed the deed to her father and continued so until the time of trial of the last case at least. The trial court found that she was competent. This being a case of equitable cognizance, we have weighed the evidence and we find that the judgment of the trial court is sustained by the evidence and is certainly not against the clear weight thereof. Nettie Whitt suffered from epilepsy from the time she was twelve or thirteen years old. She attended school until about fourteen years old and reached the eighth grade. The testimony as to her mental attainments was in sharp conflict but the clear weight of the testimony sustains the view that she was not insane or of unsound mind. Her only trouble was that she sometimes had epileptic seizures. She married in June, 1915 and lived a normal life except for those seizures. She had two children. One died in infancy and the other, a son, is still alive and in 1949 was making $2.15 an hour as a cement finisher. She did become ill and on the 14th of March, 1931 was admitted to Oklahoma Central Hospital at Norman. She was declared an incompetent on June 22, 1931. She was discharged from Central Hospital on August 15, 1931. She was restored to competency on September 21, 1931 by order of the County Court of Garvin County. She was placed in the Camarillo State Hospital in California on March 16, 1939 and was paroled from there to her husband on May 29, 1939. These two confinements are the only record of mental illness other than her epilepsy and that ailment was responsible for her being placed in the hospitals. It is very clear from the testimony that she was sane and of a sound mind at the time she filed the suit in 1919 to recover this sixty acres she had deeded her father and she continued in such a state until 1931 and there is nothing to show that she has been declared incompetent since her competency was restored in September 1931, until January 27, 1950 when the present guardian was appointed for the purpose of bringing this suit. To say that she did not know what she was doing when she brought suit against her father in 1919 and took the stand and testified in her own behalf would be contrary to the evidence.

The plaintiff's witness, Dr. J. C. Matheney testified that "I think she would know that she signed her land away to her daddy." On cross-examination in answer to the question "She wasn't insane" he answered, "No, I wouldn't call her insane."

Her own full sister, a very intelligent woman with a Bachelor of Arts Degree from Oklahoma A. & M. College and a Master of Arts Degree from Northwestern

University, testified that Nettie was sane and of sound mind when she deeded her land to her father.

Nettie Whitt is now past her fifty-eighth birthday. She has raised a child to maturity. She performed the duties of a housewife. She has visited and corresponded with her relatives as any normal person. We will not say that she was or is insane or of unsound mind.

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and WELCH, CORN and BLACKBIRD, JJ., concur.

DAVISON, and O'NEAL, JJ., dissent.