DEUTSCHE BANK NATIONAL TRUST CO. v. RICE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:DEUTSCHE BANK NATIONAL TRUST CO. v. RICE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 DEUTSCHE BANK NATIONAL TRUST CO. v. RICE
2021 OK CIV APP 21
493 P.3d 1043
Case Number: 117786
Decided: 10/07/2020
Mandate Issued: 06/02/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 21, 493 P.3d 1043

 

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE,[1] Plaintiff/Appellee,
v.
RICHARD RICE, Defendant/Appellant,
and
SPOUSE OF RICHARD RICE, if Married, JOHN DOE, as Occupant of the Premises, JANE DOE, as Occupant of the Premises, and WELLS FARGO BANK, NATIONAL ASSOCIATION, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE THOMAS E. PRINCE, TRIAL JUDGE

AFFIRMED

Matthew J. Hudspeth, BAER & TIMBERLAKE, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee

Robert C. Newark, III, A NEWARK FIRM, LLC, Edmond, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 In this mortgage foreclosure proceeding, Richard Rice appeals from the trial court's grant of summary judgment to Deutsche Bank National Trust Company, as Trustee, (the Bank) and the court's denial of his counterclaim for breach of contract.[2] From our review of the summary judgment record, we affirm.

BACKGROUND[3]

¶2 On December 14, 2004, Mr. Rice and his then wife[4] executed a note and mortgage securing that note with Defendant Wells Fargo Bank, National Association, on the property that is the subject of this foreclosure action. The note and mortgage were modified by a loan modification agreement executed on September 3, 2012. On March 25, 2016, the Bank filed its foreclosure petition alleging Mr. Rice has been in default under the note since November 1, 2015, and sought a judgment against him for, among other amounts, $182,222.88 with interest of 2% per annum, attorney's fees, and costs and sought foreclosure of the property. A copy of the endorsed in blank note was appended to the petition along with a copy of the mortgage and the loan modification agreement, among other documents.

¶3 Mr. Rice filed his "Combined Answer and Cross-Petition" in which he denied most of the Bank's allegations, including its right to enforce the note, and asserted several defenses including the allegation that the Bank is not the holder of the note. In his cross-petition, Mr. Rice raised five theories of recovery against the Bank including breach of the mortgage contract. Mr. Rice alleged that he received notice on January 1, 2016, that the subject property was no longer insurable because the 2015 hazard (homeowners) insurance had not been paid. He alleged that under the terms of the mortgage, he was required to provide notice of insurance to the Bank, he provided that notice, and the Bank never waived the escrow requirements in writing. Mr. Rice alleged he contacted Nationstar Mortgage, LLC, the loan servicer for the Bank. He further alleged Nationstar admitted it "failed to pay the [escrow] funds to the insurance company," and stated it was "still holding the funds and would refund them to [him]." Mr. Rice alleged that as of the time of the filing of the foreclosure petition, the Bank had not refunded the escrow money to him, and because of the Bank's failure to pay the insurance premium in 2015, he "is now unable to obtain adequate property insurance." He claimed he was entitled to the escrow funds for the unpaid insurance premium, and "future damages" that he "will incur as a result of [the Bank's] . . . failure to pay the insurance premium." Mr. Rice also claimed entitlement to costs and attorney fees.

¶4 The Bank filed its first motion for summary judgment on December 12, 2016, to which Mr. Rice filed his response in opposition. The trial court denied the motion on February 3, 2017. The Bank again filed a motion for summary judgment on November 6, 2018, in which the alleged uncontroverted facts and arguments made in the first motion were reasserted and, in addition, the Bank alleges uncontroverted facts pertaining to the payment of the 2015 insurance premium and its argument why it is entitled to judgment on Mr. Rice's breach of contract claim. The Bank admitted it "received evidence of insurance on December 19, 2014," but alleges it attempted to pay the premium amount of "$16,069.00, but that payment was rejected multiple times." It further alleges that it "was required to submit the payment manually, which was finely accepted on February 2, 2015," and "[t]he policy purchased, (Policy No. [XXXX]) was in effect from January 17, 2015 -- January 17, 2016." Attached to the Bank's motion are an affidavit of Nationstar's documents execution associate, a detailed loan payment history, and documents between Nationstar and Travelers Home and Marine Insurance Company,[5] Mr. Rice's insurance company, and between Mr. Rice and the Bank's counsel, as well as between Nationstar and Mr. Rice.

¶5 In his response and objection to the motion, Mr. Rice denies the Bank is the holder of the note and has a right to enforce it, denies he is in default and the amounts alleged that he owes, and denies the Bank made payments of the premium which were rejected, but admits the insurance premium payment was accepted on February 2, 2015, and a policy was in effect during the 2015 calendar year. Absent from Mr. Rice's response to the Bank's statement of uncontroverted facts is any record reference in support of his claims that controverted facts remain;[6] however, numerous documents are to his response. Most of these documents are those attached to the Bank's motion;[7] however, he has also included collection notes[8] that state Nationstar put a stop on the check it issued to Travelers because of its internal procedures that only process checks for up to $10,000, and which state two checks must be sent in the future. Those notes also confirm Travelers cancelled the policy for nonpayment and would not reinstate the old policy, but that a new policy would have to be obtained and that a new policy with Lexington Insurance Company was obtained for $9,109.64. Those notes also state in response to Mr. Rice's inquiry on February 2, 2016, that he could not receive the escrow amounts for the unpaid 2015 premium in the amount of $11,461, but would have to obtain new insurance or the Bank would force place an insurance policy, and that he was advised a new policy was being written by the David Moore Agency with Lexington Insurance. While the collection notes state Mr. Rice was not going to receive the escrowed funds, he also appended to his response the same letter the Bank appended to its motion from Mr. Rice to the Bank's attorney in which he claims he was told by the Bank's servicer that he would receive the escrowed funds from 2015 because no premium was paid in 2015.

¶6 A hearing was held on December 7, 2018.[9] After taking the matter under advisement and after having "reviewed the Parties' submissions, heard argument of counsel and for good cause shown," the trial court entered its order granting the Bank's motion. The trial court found no controverted issues of material fact exist "[b]ased on the verified statements in the Affidavit attached as Exhibit 'E' to the [Bank's]" November 6, 2018 motion for summary judgment.

¶7 The trial court entered its Journal Entry of Judgment on January 22, 2019, finding the Bank's motion for summary judgment should be granted on the merits and finding there is no basis in law or fact to support Mr. Rice's defenses and claims asserted in his Answer and Cross-Petition. Among other findings, the court found Mr. Rice is in default on the note and the Bank is entitled to foreclose its mortgage on the subject property.

¶8 Mr. Rice appeals.[10]

STANDARD OF REVIEW

¶9 In order for summary adjudication to be appropriate, not only must there be no dispute as to material facts, but all reasonable inferences and conclusions to be drawn from those facts must be in one party's favor and show that party is entitled to judgment as a matter of law. Runyon v. Reid, [1973 OK 25,] 510 P.2d 943[.] The evidentiary materials must be viewed in the light most favorable to the party opposing summary judgment. Hargrave v. Canadian Valley Elec. Co-op., [1990 OK 43,] 792 P.2d 50[.] Moreover, any ruling on a motion for summary judgment must be made on the record the parties have actually made and not upon one which is theoretically possible. Daugherty v. Farmers Co-op Ass'n, [1984 OK 72,] 689 P.2d 947[.]

Igelheart v. Warrington, 1995 OK CIV APP 15, ¶ 2, 891 P.2d 619. However, mere allegations in a pleading that are unsupported by evidentiary material will not defeat an otherwise valid motion for summary judgment. Weldon v. Dunn, 1998 OK 80, ¶ 8, 962 P.2d 1273 (citing Stephens v. Yamaha Motor Co., Ltd., 1981 OK 42, ¶ 11, 627 P.2d 439 (once party asserting motion for summary judgment supports statement of undisputed material facts with appropriate evidentiary materials, party opposing motion cannot rely solely on pleading but must present evidentiary material)).

ANALYSIS

¶10 Mr. Rice maintains that the issue to be decided on appeal is whether the trial court erred as a matter of law in granting summary judgment to the Bank on his breach of contract claim. Mr. Rice does not argue in his Petition in Error that the trial court erred in finding the Bank was the holder of the note with a right to enforce it, that he executed the note and mortgage and was in default under the note, or that the amount of the judgment against him is inaccurate. Mr. Rice instead contends:

The issue in dispute in this case is whether [the Bank] breached the Mortgage before [him]. As shown in the Motion for Summary Judgment and the Response, [the Bank] admitted that it did not pay the Home Owner's Insurance as required timely. As a result, [he] lost such coverage. It was not until sometime later that [the Bank] attempted to correct its mistake.

As such, there is a genuine fact issue related to the payment of the Insurance by [the Bank] and if such failure to pay occurred before [he] missed any contractual payments made under the Mortgage.

¶11 Although he cites no legal authority for his breach of contract claim, Mr. Rice's argument appears to be grounded in the Uniform Commercial Code. Title 12A O.S. 2011 & Supp. 2013 § 1-304 provides, in part, that "[e]very contract of duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Cf. CPT Asset Backed Certificates, Series 2004-EC1 v. Kham, 2012 OK 22, ¶ 24, 278 P.3d 586 ("[M]ortgage securing the payment of a negotiable note is merely an incident and accessory to the note, and partakes of its negotiability, and the endorsement and delivery of the note carries with it the mortgage without any formal assignment thereof." (citation omitted)). While we do not agree the evidence and inferences drawn therefrom show the Bank's failure to pay the 2015 premium during 2015 was done in bad faith, even if that assumption is made, Mr. Rice has produced no evidentiary materials that show he has suffered any damages as a result.

¶12 Despite his allegations, Mr. Rice has produced no evidentiary materials that show he suffered any damages even assuming the delayed insurance payment by the Bank was a breach of the mortgage contract. The record does contain a letter Mr. Rice wrote to the Bank's counsel dated April 6, 2016, in which he states the substance of conversations he had with the Bank's servicer about the escrowed funds and his claim that he was told the escrowed sums would be paid to him.[11] No other evidentiary material, such as a sworn affidavit or evidence that he would not qualify for adequate property insurance, is in the record on appeal. However, the record does contain the servicer's notification to Mr. Rice in June 2016 that insurance had been secured, the premium had been paid to another insurance company, and the effective date of that policy was for calendar year 2015. The collection notes appended to Mr. Rice's response to the motion for summary judgment show he was informed about the need for the new policy in February 2016, and was advised that a policy had been secured. Consequently, the uncontroverted evidence shows the property was insured even after the policy for insurance with Travelers had been cancelled for nonpayment of the premium and that the escrowed funds were used by the Bank to secure that insurance. Thus, even assuming the delayed insurance payment by the Bank was a breach of the mortgage contract, Mr. Rice has provided no evidence or evidentiary materials of damages. Therefore, the trial court did not err in granting summary judgment to the Bank on Mr. Rice's breach of contract claim. 

¶13 While Mr. Rice does not challenge the trial court's findings regarding the Bank's right to enforce the note and mortgage, from our review of the summary judgment record, the uncontroverted facts demonstrate the Bank's status as the holder of the note,[12] Mr. Rice's default as of November 1, 2015, and the amount of the judgment.[13] Consequently, from our review of the summary judgment record, the trial court properly granted judgment to the Bank on its foreclosure action unless equity requires a different result.

¶14 In his arguments before the trial court regarding foreclosure, Mr. Rice also argued the Bank's failure to timely pay the insurance premium occurred before his default.[14] Though he has not articulated what result should occur, he appears to urge that the Bank should not be permitted, on equitable grounds, to accelerate the note and, therefore, should be precluded from foreclosing the mortgage. Regrettably, neither Mr. Rice nor the Bank in its treatment of this issue cites to any authority for their respective conclusions about what effect the Bank's alleged failure to timely pay the insurance premium should have on the Bank's ability to foreclose the mortgage. In its second motion for summary judgment, the Bank did address the nonpayment of insurance issue and relied on the affidavit of its loan servicer's agent as well as other correspondence between the Bank's servicer and Mr. Rice. The Bank's argument, however, is only one paragraph, and does not address the question of whether its failure to pay the premium in 2015 should preclude its ability to accelerate the note and foreclose on the property.

¶15 We agree with Mr. Rice that taking the record evidence and the reasonable inferences drawn from that evidence in the light most favorable to him, the Bank failed to timely pay the insurance premium in 2015 though the uncontroverted facts show efforts had been made by the Bank to pay that premium in 2015. Thus, a technical breach of the mortgage contract occurred prior to Mr. Rice's default in November 2015. We cannot agree, however, that the Bank's mistake of sending a payment in an amount too large for its system to process or its inattention provides an equitable reason why it should be barred from accelerating the note and foreclosing its mortgage.

¶16 Though concerned with a mortgagor's technical default, the Oklahoma Supreme Court addressed the issue of a technical default and the mortgagee's ability to foreclosure the mortgage as a result in Murphy v. Fox, 1955 OK 1, 278 P.2d 820. There, the Supreme Court explained it "has adhered to the principle that in a suit of equitable cognizance to foreclose a real estate mortgage the trial court may refuse foreclosure where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagees." Id. ¶ 21 (citation omitted). The Court held

Herein, it appears that the [mortgagor's] failure to make punctual payment of taxes was due to mistake or inadvertence as to the delinquency date of the taxes and that his default in this regard, for a period of twelve days only, caused no impairment of the [mortgagee's] mortgage security, nor otherwise worked an injury to the [mortgagee].

In the circumstances, we hold the trial court did not err in denying foreclosure of the mortgage.

Id. ¶¶ 22-23. See also Igleheart, 1995 OK CIV APP 15, ¶ 19 (mortgage foreclosure is equitable proceeding and trial court may refuse to accelerate a note on equitable grounds; however, that power should be exercised only sparingly). The Supreme Court has stated that in circumstances such as those presented in Murphy where the mortgagee's acts contributed to the mortgagor's default in payment of taxes "less favor is shown to the enforcement of the acceleration clause when coupled with a good faith mistake on the part of the mortgagor." Fed. Nat'l Mortg. Ass'n v. Walter, 1961 OK 172, ¶ 11, 363 P.2d 293.[15]

¶17 Given the record in this case, we conclude the trial court did not abuse its discretion in evidently determining that the Bank's errors in its attempts to pay the insurance premium in 2015 did not amount to oppressive or unconscionable action or that it was otherwise dealing unfairly with Mr. Rice.[16] The Bank identified an insurer in February 2016, and on March 8, 2016, prior to filing its foreclosure petition on March 24, 2016, the Bank secured insurance on the property and paid the premium.[17] Further, as above noted, nothing in the record supports a reasonable inference that the Bank's failure to pay the insurance premium in 2015 was the reason why Mr. Rice defaulted on his loan payment in November 2015.

CONCLUSION

¶18 We conclude the trial court did not err in granting summary judgment to the Bank on Mr. Rice's counterclaim for breach of contract because the summary judgment record presents no evidence or inferences from which damages to him are shown because of the Bank's delay in paying the 2015 insurance premium. Further, based on our review of the summary judgment record taken in the light most favorable to Mr. Rice, we conclude the trial court did not err in determining that equity does not preclude the Bank's right to accelerate the note and foreclose its mortgage. Accordingly, we affirm.

¶19 AFFIRMED.

RAPP, J., and FISCHER, J., concur.

FOOTNOTES

[1] This caption is the caption set out in the Petition, the Journal Entry of Judgment and the Petition in Error; however, the party's full name as alleged in the Petition is Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2005-HE3 Mortgage Pass-Through Certificates, Series 2005-HE3.

[2] All other Defendants were dismissed from the lawsuit or have otherwise not filed an appeal.

[3] According to the court's appearance docket, numerous filings have been made in this case including a third-party petition by Mr. Rice against the Bank of America, N.A. None of the trial court's orders concerning these other filings and proceedings has been appealed by Mr. Rice in this appeal.

[4] In a subsequent dissolution of marriage proceeding, Mr. Rice was awarded the subject property and his former wife executed a quit claim deed to the property to him. Thus, as the Bank apparently agrees, only Mr. Rice is obligated under the note and mortgage in this foreclosure action.

[5] Among other things, the exhibit shows notice of payment due by January 17, 2015, from Travelers to Nationstar for a continuation of the January 17, 2014 homeowners policy on the subject property. A notice from Travelers dated February 19, 2015, was sent to Nationstar returning its check because "[y]our policy does not appear to be a valid Travelers number." On June 29, 2015, Travelers informed Nationstar that it was returning a check in the amount of $16,069 because the policy was cancelled.

[6] Rule 13(b) of the Rules for District Courts of Oklahoma, 12 O.S. 2011 & Supp. 2013, ch. 2, app., provides, in part, as follows:

Unless otherwise ordered by the court, the adverse party shall attach to, or file with, the statement evidentiary material justifying the opposition to the motion, but may incorporate by reference material attached to or filed with the papers of another party. In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.

[7] Other exhibits were also appended to his response including the Bank's answers to interrogatories and an affidavit by the Bank's document execution specialist averring to the date of default, the amounts due and owing, and the Bank's status as holder of the note.

[8] The notes reflect various entry dates including 8/17/15, 2/17/2016, 2/18/2016, and 3/14/2016.

[9] No transcript of that hearing or narrative statement was filed by Mr. Rice on appeal.

[10] This case was appealed over a year and a half ago and assigned to a different appellate panel. It was subsequently reassigned to this panel.

[11] Although not a sworn document, this letter is considered acceptable evidentiary material for purposes of summary judgment. In Davis v. Leitner, 1989 OK 146, 782 P.2d 924, the Oklahoma Supreme Court determined what material could be considered by the trial court on a motion for summary judgment. The Court stated the "other materials" permitted by Rule 13 are not required to meet the "standard of competent, admissible evidence." Id. ¶ 13. Rather,"[i]t is enough that these 'other materials' reasonably show the judge who is considering the motion that the party opposing the motion will be able at the time of trial to present competent admissible evidence to support the allegations." Id. "Supporting materials are sufficient if they show the reasonable probability" that there will be "admissible evidence at the time of trial which might reasonably persuade the trier of fact in his favor on the issue in dispute. Id. ¶ 15. However, even if we take as true Mr. Rice's statement that he was told he would receive the funds that were held in escrow during 2015 for the 2015 insurance premium but not paid in 2015 for the insurance premium, he admits the premium for 2015 was paid in 2016, so no unpaid escrow for unpaid insurance premium remained to be paid to him. In other words, that letter does not support his claim of damages. By Mr. Rice's own allegations, he was notified about the nonpayment of the insurance premium in January 2016, two months after his default. To the extent Mr. Rice appears to claim in his letter that the nonpayment of the escrowed sums to him was a cause of his default in November 2015 -- that is, some evidence of damage caused to him by the Bank's breach -- the uncontroverted facts do not support that claim.

[12] The record contains, among other documents, the petition to which is appended a copy of the endorsed in blank note, and a copy of the note attached to the motion for summary judgment along with the affidavit of a document execution associate for the Bank's loan servicer and a copy the assignment of the mortgage to the Bank.

[13] In this regard we also note that Mr. Rice's argument in opposition to the Bank's second motion for summary judgment challenges the affidavit upon which the Bank relies for facts in support of its status as holder of the note, default, and the amounts due as a result. He asserts the affidavit only contains self-serving statements, citing Poafpybitty v. Skelly Oil Company, 1973 OK 110, 517 P.2d 432, in which the Oklahoma Supreme Court stated:

[I]n considering the affidavit of an interested witness, the fact of his interest in the result of a suit is sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact. We add, however, that such strictness of consideration does not apply to a statement in an affidavit that is uncontroverted and has indication of support elsewhere in the record. We thus preserve the salient reason for the use of affidavits in summary judgment matters, i.e., placing before the court important matter that may aid in avoidance of a useless trial.

Id. ¶ 17. However, other documents of record show the payment history of the note and Mr. Rice's default on November 1, 2015, and no evidence has been produced by Mr. Rice to contradict the payment history produced by the Bank. Consequently, as stated by the Poafpybitty Court, the affidavits (Bank's Exh. E and Mr. Rice's Exh. H) are an important matter that were properly considered by the court as an aid to avoid a useless trial. Further, the endorsed in blank note is appended to the petition, supporting the Bank's right to enforce the note as stated by the Oklahoma Supreme Court in numerous opinions, see, e.g., Deutsche Bank Nat'l Trust v. Brumbaugh, 2012 OK 3, ¶ 9, 270 P.3d 151, along with the affidavit attached to the Bank's motion averring the Bank is the holder of the note. Mr. Rice has produced no evidentiary materials that contradict the Bank's evidence.

[14] These arguments were made in his responses to the Bank's first and second motions for summary judgment, respectively.

[15] In interpreting Oklahoma decisional law, the Tenth Circuit Court of Appeals stated that

whether the Oklahoma court permits acceleration depends on the conduct of the mortgagee and whether he has dealt fairly with the debtor or has acted oppressively or unconscionably. This view is consistent with that of several other jurisdictions. See Phipps v. First Fed. Sav. & Loan Ass'n, 438 N.W.2d 814, 819 (S.D. 1989) (an acceleration clause will be enforced absent fraud, bad faith, or other conduct on part of the mortgagee which would make it unconscionable to enforce the clause); Key Int'l Mfg., Inc. v. Stillman, 103 A.D.2d 475, 480 N.Y.S.2d 528, 530 (1984) (absent some element of fraud, exploitative overreaching or unconscionable conduct by the creditor, the court should enforce an acceleration clause), aff'd as modified, 66 N.Y.2d 924, 498 N.Y.S.2d 795, 489 N.E.2d 764 (1985); Bowen v. Danna, [276 Ark. 528,] 637 S.W.2d [560,] 564 [(1982)](a court in equity can relieve a debtor from the hardship of acceleration based on accident, mistake, fraud, or inequitable conduct of the creditor); First Fed. Sav. & Loan Ass'n of Phoenix v. Ram, 135 Ariz. 178, 659 P.2d 1323, 1325 (Ct. App. 1982) (same); Ciavarelli v. Zimmerman, 122 Ariz. 143, 593 P.2d 697, 698-99 (Ct. App. 1979) (same).

Greenberg v. Serv. Bus. Forms Indus., Inc., 882 F.2d 1538, 1542 (10th Cir. 1989).

[16] As discussed by the court in Zions First National Bank v. 5811 49th Ave., LLC, No 10-CV-68-TCK-PJC, 2011 WL 4396946, at *5 (N.D. Okla. Sept. 21, 2011) (Westlaw publication only), "the level of oppressive and unconscionable conduct contemplated by Oklahoma law" is seen in a comparison of the following cases:

Resolution Trust Corp. v. Mustang Partners, 946 F.2d 103, 105 (10th Cir.1991) (applying Oklahoma law) (holding that mortgagee's alleged "error" in including late charges and other amounts in a statement of amount owed was not the type of error that "cause[d] or propagated the default, nor does it equate with mistake or inattention of the magnitude that would excuse [the debtor's] default or delay [the debtor's] obligation to cure"); Igleheart, 891 P.2d at 622 (holding that trial court erred in concluding that equitable principles prevented mortgagor from accelerating debt because debtor did not "take legal action to remedy what he perceived as a breach of the agreement" and instead "chose to withhold payment and now wishes to be relieved of the consequences of that decision"), and Igleheart, 891 P.2d at 622 (holding that trial court erred in concluding that equitable principles prevented mortgagor from accelerating debt because debtor himself chose to withhold payment and could not be relieved of the consequences of that decision), with Murphy, 278 P.2d at 826 (affirming a trial court decision refusing to enforce an acceleration clause in a mortgage after concluding the evidence showed only a technical default due to inattention and inadvertence and that the mortgagee had refused payment, thereby acting unconscionably in an effort to cause a default).

[17] See June 10, 2016 response to Mr. Rice's inquiry about the escrow account and payment of insurance premium.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 15, 891 P.2d 619, 66 OBJ 891, Igleheart v. Warrington
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed
 1990 OK 43, 792 P.2d 50, 61 OBJ 1134, Hargrave v. Canadian Valley Elec. Co-op., Inc.
Discussed
 1955 OK 1, 278 P.2d 820, MURPHY v. FOX
Discussed
 1954 OK 355, 278 P.2d 826, McCAUGHEY v. LESTER
Cited
 1961 OK 172, 363 P.2d 293, FEDERAL NATIONAL MORTGAGE ASSOCIATION v. WALTER
Discussed
 1973 OK 25, 510 P.2d 943, RUNYON v. REID
Discussed
 1973 OK 110, 517 P.2d 432, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 2012 OK 3, 270 P.3d 151, DEUTSCHE BANK NATIONAL TRUST v. BRUMBAUGH
Discussed
 2012 OK 22, 278 P.3d 586, CPT ASSET BACKED CERTIFICATES, SERIES 2004-EC1 v. KHAM
Discussed
 1981 OK 42, 627 P.2d 439, Stephens v. Yamaha Motor Co., Ltd.
Discussed
 1998 OK 80, 962 P.2d 1273, 69 OBJ 2630, Weldon v. Dunn
Discussed
 1984 OK 72, 689 P.2d 947, Daugherty v. Farmers Co-op. Ass'n
Discussed
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 1-304, Obligation of Good Faith
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA